**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA and NEW JERSEY** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **Civil Case No.** |
| **PASSAIC VALLEY WATER COMMISSION,** | ) | |
| **Defendant.** | ) | |

**CONSENT DECREE**

# TABLE OF CONTENTS


I. JURISDICTION AND VENUE ..... 4

II. APPLICABILITY ..... 5

III. OBJECTIVES ..... 6

IV. DEFINITIONS ..... 6

V. CIVIL PENALTY ..... 12

VI. GENERAL REQUIREMENTS FOR PVWC SUBMITTALS ..... 13

VII. LONG-TERM COMPLIANCE REQUIREMENTS ..... 16

VIII. INTERIM MEASURES ..... 22

IX. MEETING REQUIREMENTS ..... 25

X. REPORTING REQUIREMENTS ..... 25

XI. STIPULATED PENATLIES ..... 29

XII. FORCE MAJEURE ..... 33

XIII. DISPUTE RESOLUTION ..... 35

XIV. INFORMATION COLLECTION AND RETENTION ..... 38

XV. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ..... 43

XVI. COSTS ..... 45

XVII. NOTICES ..... 45

XVIII. EFFECTIVE DATE ..... 47

XIX. RETENTION OF JURISDICTION ..... 48

XX. MODIFICATION ..... 48

XXI. TERMINATION ..... 49

XXII. PUBLIC PARTICIPATION ..... 50

XXIII. PUBLIC NOTIFICATION ..... 50

XXIV. SIGNATORIES/SERVICE ..... 52

XXV. INTEGRATION ... 52

XXVI. 26 U.S.C. SECTION 162(f)(2)(A)(ii) IDENTIFICATION ... 53

XXVII. HEADINGS ... 53

XXVIII. FINAL JUDGMENT ... 54

WHEREAS:

Plaintiffs the United States of America ("United States"), on behalf of the United States Environmental Protection Agency ("EPA"), and the State of New Jersey ("State"), on behalf of the New Jersey Department of Environmental Protection ("NJDEP"), filed a complaint in this action concurrently with this Consent Decree by authority of Section 1414(b) of the Safe Drinking Water Act, 42 U.S.C. § 300g-3(b) ("the SDWA" or "the Act"), for continuing violations of the SDWA and the Long Term 2 Enhanced Surface Water Treatment Rule ("LT2 Rule"), 40 C.F.R. § 141, Subpart W, an applicable requirement of the SDWA, against the Passaic Valley Water Commission ("PVWC") to demand compliance with the LT2 Rule concerning three uncovered finished drinking water reservoirs or water storage facilities; and

PVWC does not admit any liability to the United States or the State arising out of the transactions or occurrences alleged in the Complaint; and

PVWC owns and operates the following three "uncovered finished water storage facilities" in New Jersey as per the LT2 Rule and 40 C.F.R. § 141.714: (i) Levine Reservoir in Paterson, (ii) New Street Reservoir in Woodland Park, and (iii) Great Notch Reservoir in Woodland Park (hereinafter collectively referred to as "the Reservoirs"); and

PVWC sells water to a number of Consecutive Systems that do not maintain the minimum water storage volume required by NJDEP within their distribution systems and therefore rely on the water storage volume of PVWC's "uncovered finished water storage facilities" to ensure adequate supply and pressure in their respective distribution systems. These systems have been granted water storage waivers by NJDEP.

The LT2 Rule is intended to protect public health from illness due to *Cryptosporidium* and other microbial pathogens in drinking water by requiring that either: 1) uncovered finished water storage facilities must be covered, or 2) the water discharged from any uncovered finished water storage facility must be treated; and

PVWC pursuant to this Consent Decree agrees to develop projects designed to bring the Reservoirs into compliance with the LT2 Rule, and these projects are referred to hereinafter as the "Compliance Projects"; and

When the LT2 Rule went into effect on April 1, 2009, PVWC expected that any plan for compliance would entail considerable time and expense before construction could proceed. Thus, on March 30, 2009, PVWC entered into an Administrative Consent Order with the NJDEP ("Original ACO") establishing a process for PVWC first to study its options, propose a design solution, and reinforce its aging treatment and delivery system for resiliency; and

After conducting a feasibility study, PVWC's consultants concluded that for the Levine and New Street Reservoirs, the only viable option was to take them offline, drain them in whole or in part, and install concrete tanks therein, and

With respect to the Great Notch Reservoir, there was a possibility that its water could be treated alongside a neighboring uncovered reservoir located in Cedar Grove, New Jersey ("Cedar Grove Reservoir"), owned by the City of Newark, New Jersey ("Newark"); and

Between 2016 and 2019, Newark and PVWC worked together to explore the possibility of building a joint venture solution that would bring the Cedar Grove and Great Notch Reservoirs into compliance with the LT2 Rule, including the possibility of not having to cover or drain either Reservoir. Consideration of feasibility issues has resulted in further

exploration of additional alternatives, including the possibility that the Great Notch Reservoir may need to be taken offline, drained in whole or in part, and replaced with concrete tanks; and

In preparation for undertaking the Compliance Projects, PVWC performed numerous projects designed to improve system resiliency including but not limited to: (i) the Verona Tanks Project, which included the installation of two 2.5 million gallon concrete storage tanks for $2.3 million, and was completed in 2015, (ii) the Standby Generator Project, which included installing diesel generators and a new electrical system at the Little Falls Water Treatment Plant for $29.5 million, and was substantially completed in July 2023; and (iii) the Levine Reservoir Compliance Project, which is underway and was awarded for $41,819,780.00; and

On November 29, 2023, PVWC resolved to continue to raise rates and issue bonds for water and other services that it provides to both residential and commercial customers over the next five years to cover a range of obligations, including but not limited to, its growing operational budget, and the anticipated costs of complying with this Consent Decree and the applicable New Jersey Safe Drinking Water rules at N.J.A.C. 7:10-1, *et seq*.; and

The Original ACO between the NJDEP and PVWC was amended and restated three times over the years, with the latest version having been entered on May 21, 2019, referred to as the Third Amended Administrative Consent Order ("TAACO"); and

The TAACO currently directs PVWC to bid the New Street Reservoir Compliance Project within 180 Days after PVWC awards a contract for the Levine Compliance Project, which became the subject of a bid protest and then proceeded through the New Jersey State Court system until January 10, 2025 when the Superior Court Appellate Division found in favor of PVWC, allowing it to move forward with the Levine Compliance Project; and

While NJDEP recognizes PVWC's work to comply with the Original ACO and its amendments, PVWC seeks relief from the TAACO schedule, including more time to perform additional studies, including construction feasibility and condition assessment of existing facilities reflecting the possibility that New Street Reservoir should be addressed after Great Notch Reservoir, to manage the risks and costs of the New Street and Great Notch Reservoir Compliance Projects; and

Accordingly, the Parties agree to incorporate, coordinate, and modify the schedules and obligations of the TAACO, as set forth in this Consent Decree, to achieve final compliance with the LT2 Rule at the Reservoirs; and

The schedule set forth in this Consent Decree for construction of the Compliance Projects is a judicially enforceable schedule; and

The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law, and with the consent of the Parties,

IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section l414(b) of the Act, 42 U.S.C. § 300g-3(b), and over the Parties. Venue lies in this District pursuant to 28 U.S.C. §§ 139l(b) and 1395(a), because PVWC resides in and is found in this judicial district. For purposes of this Decree, or any action to enforce this Decree, PVWC consents to the Court's jurisdiction over

this Decree and any such action and over PVWC and consents to venue in this judicial district.

2. Solely for purposes of this action and Decree, PVWC agrees that the Complaint states claims upon which relief may be granted pursuant to Section 1414(b) of the Act.

## II. APPLICABILITY

3. The obligations of this Consent Decree apply to and are binding upon the United States and the State, and upon PVWC and any successors, assigns, or other entities or persons otherwise bound by law.

4. PVWC shall not transfer ownership, or the responsibility to operate and/or manage, or any other interest in, any of its Reservoirs without the written consent of the Plaintiffs until the termination of this Consent Decree. No such transfer, whether in compliance with this Paragraph or otherwise, shall relieve PVWC of its obligation to ensure that the terms of the Consent Decree are implemented. At least 30 Days prior to such transfer, PVWC shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA Region 2, the United States Attorney's Office for the District of for New Jersey ("the United States Attorney's Office"), the United States Department of Justice ("DOJ"), and the State, in accordance with Section XVII (Notices) of this Decree. Any attempt to effectuate such a transfer without complying with this Paragraph constitutes a violation of this Consent Decree.

5. PVWC shall provide a copy of this Consent Decree to all its officers, employees, and agents whose duties might reasonably include compliance with any

provision of this Consent Decree, as well as to any contractor retained to perform work required under this Consent Decree. PVWC shall include in any such contract entered into after the Effective Date terms and schedules consistent with this Consent Decree.

6. In any action to enforce this Consent Decree, PVWC shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## III. OBJECTIVES

7. The express purpose of the Parties in entering this Consent Decree is to ensure compliance with the LT2 Rule.

## IV. DEFINITIONS

8. Terms used in this Consent Decree that are defined in the Act or in regulations promulgated under the Act shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Consent Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a. "Cedar Grove Reservoir" shall mean the reservoir owned by Newark, and it is not included within the three Reservoirs owned by PVWC.

b. "Complaint" shall mean the complaint filed by the Plaintiffs in this action.

c. "Compliance Project(s)" shall mean the project(s) designed to bring the Reservoirs into compliance with the LT2 Rule, 40 C.F.R. §141.714.

d. "Comprehensive Microbial Action Plan" shall mean the action plan

for enhanced monitoring and response procedures prepared by PVWC that describes actions to be taken in response to elevated levels of microbial pathogens, including *Cryptosporidium* and/or *Giardia,* at the Reservoirs.

e. “Comprehensive Reservoir Management Plan” shall mean the plan for enhanced monitoring and management of the Reservoirs that includes at least the following elements: surface water runoff control, wildlife management, maintaining water quality, security improvements to prevent unauthorized access, an emergency response plan for planning and responding to emergency situations, a comprehensive monitoring plan, and a schedule for implementing major components of the Reservoir Management Plan.

f. “Conceptual Design” also known as “schematic design” shall represent the basic parameters of the project including number of facilities, volume, land footprint, potential phasing of work, rudimentary schedules, and order of magnitude costs.

g. “Consecutive(s)” or “Consecutive System(s)” shall mean a public water system that receives some or all of its finished water from PVWC. Delivery may be through a direct connection or through the distribution system of one or more consecutive systems.

h. “Consent Decree” or “Decree” shall mean this Consent Decree and all appendices attached hereto.

i. “Day” shall mean a calendar day unless expressly stated to be a business day. In computing any period of time under this Consent Decree, where the

last day would fall on a Saturday, Sunday, or federal or state holiday, the period shall run until the close of business of the next business day.

j. “Great Notch” or “Great Notch Reservoir” shall mean the Great Notch Reservoir located in Passaic County, Rifle Camp Road, Woodland Park, New Jersey.

k. “EPA” shall mean the United States Environmental Protection Agency and any of its successor departments or agencies.

l. “Effective Date” shall have the definition provided in Section XVIII (Effective Date).

m. “Facility(ies)” shall mean any building(s) or other structure(s), including for finished water storage, built or installed by PVWC for a specific function or owned or operated by PVWC.

n. "Final Compliance Date" shall mean that by October 1, 2054, PVWC shall Place into Service all Compliance Projects and Related Projects in compliance with the LT2 Rule and all applicable New Jersey Safe Drinking Water rules at N.J.A.C. 7:10-1, *et seq*., and shall continue to comply with all such provisions and applicable requirements thereafter.

o. “Final Design” shall mean an engineer's plans and specifications developed in conformance with the LT2 Rule and all applicable New Jersey Safe Drinking Water rules at N.J.A.C. 7:10-1, *et seq*. The Final Design shall be at the level of detail suitable for approval by NJDEP and for incorporation or reference in construction contract procurement documents. The Final Design shall include an updated construction plan setting forth, at a minimum, the number and scope of phases of construction contracts along with their interrelationships, including accounting for redundancy and back-ups, and a construction schedule.

p. "Interim Measures" shall mean those interim actions and/or obligations required under this Consent Decree to protect human health and the environment until the Final Compliance Date as set forth in Paragraph 31.

q. "Interim Milestones" shall mean a scheduled action or event marking a significant stage in the development and implementation of the completion and Placement into Service of the Compliance Project(s).

r. "Levine" or "Levine Reservoir" shall mean the Levine Reservoir located in Paterson, New Jersey.

s. "LT2 Rule" shall mean the requirements set forth in 40 C.F.R. § 141, Subpart W, an applicable requirement of the Act.

t. "Newark" shall mean the City of Newark, New Jersey.

u. "New Street" or "New Street Reservoir" shall mean the New Street Reservoir located in Woodland Park, New Jersey.

v. "NJDEP" shall mean the New Jersey Department of Environmental Protection.

w. "Notice to Proceed" shall mean the notification by PVWC to a contractor authorizing the contractor to commence work under the specific contract(s) for the construction or implementation of a Compliance Project or other Related Project(s).

x. "Paragraph" means a portion of this Decree identified by an Arabic numeral;

y. "Parties" shall mean the United States, the State, and PVWC.

z. "Place into Service" or "Placed into Service" or "Placement into Service" shall mean, when used in reference to the construction of a Compliance

Project or Related Project, or portion thereof, as required under this Consent Decree, the placement of the facility constructed or repaired into operation after the construction project or specified part thereof, is completed, and after Start-Up and Testing has been fully performed, and after all required permits have been received, such that the facility or specified part thereof is capable of being consistently and reliably used to accomplish the purposes for which it was intended and fully complies with applicable regulations, the Permit to Operate issued by NJDEP, and all other required permits issued to PVWC that are necessary to commence and continue operation of the facility.

aa. "PVWC" shall mean the Passaic Valley Water Commission.

bb. "Preliminary Design" shall mean documents, including drawings, developed by PVWC, which serve as the basis for plans and specifications for the Final Design and construction contracts for each phase of the construction of the Compliance or other Related Project(s). The preliminary designs shall include drawings and criteria that define general and spatial allowances for architectural, structural, mechanical, heating, ventilating, plumbing, electrical and other appurtenances. The preliminary design shall include a proposed construction plan setting forth, at a minimum, the number and scope of phases of construction contracts and their interrelationships, and a proposed preliminary construction schedule.

cc. "Related Project(s)", as distinguished from "Compliance Projects" defined above, refers to any undertaking by PVWC relating to the Compliance Projects including, but not limited to, feasibility studies, condition assessments, resiliency projects, upgrades to interconnections for Consecutives, and/or

construction to maintain PVWC's water treatment and delivery system in a state of good repair.

dd. "Reservoirs" shall mean the following reservoirs in New Jersey: Levine Reservoir in Paterson; New Street Reservoir in Woodland Park; and Great Notch Reservoir in Woodland Park. Reservoirs does not include the Cedar Grove Reservoir, in Newark, which is not owned by PVWC,

ee. "Section" shall mean a portion of this Consent Decree identified by a roman numeral.

ff. "Site Preparation" shall mean the first construction contract(s) or phase(s) as described in the Preliminary Design for the Project(s). Site Preparation shall include provision of temporary construction management facilities (such as trailers, offices, fencing and site security); construction of temporary service and access roads; site clearing and grubbing; demolition and removal of existing structures; rough grading; and provision of temporary electrical and other utilities.

gg. "Start-Up and Testing" shall mean, the start-up of the facility constructed or repaired through the construction of a Compliance Project or Related Project, or portion thereof, including initial operation, and all testing and adjustments necessary to assure that the facility is capable of being consistently and reliably used to accomplish the purpose for which it is intended and fully complies with applicable regulations.

hh. "State" shall mean the State of New Jersey.

ii. "United States" shall mean the United States of America, acting on behalf of EPA.

V. **<u>CIVIL PENALTY</u>**

9. Not later than 30 Days after the Effective Date, PVWC shall pay the sum of $132,500.00 as a civil penalty to the United States, together with interest accruing from the date on which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as of the date of lodging.

10. PVWC shall pay the civil penalty due, together with interest , by FedWire Electronic Funds Transfer ("EFT") to the Department of Justice's ("DOJ's") account, in accordance with instructions provided to PVWC after the Effective Date by the Financial Litigation Unit ("FLU") of the United States Attorney's Office, Peter W. Rodino, Jr. Federal Building, 970 Broad Street, 7th Floor, Newark, NJ 07102, 973-645-2700. The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which PVWC shall use to identify all payments required to be made in accordance with this Consent Decree. The FLU will provide the payment instructions to: Yitz Weiss, CFO, Passaic Valley Water Commission, 1525 Main Ave., Clifton, NJ 07011, 973-340-4328, yweiss@pvwc.com, on behalf of PVWC. PVWC may change the individual to receive payment instructions on its behalf by providing written notice of such change to DOJ and EPA in accordance with Section XVII (Notices).

11. At the time of payment, PVWC shall send notice that payment has been made: (i) to EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; and (ii) to the United States via email in accordance with Section XVII (Notices). Such notice shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in *United States, et. al. v. PVWC*, and shall reference the civil action number, CDCS Number, and DOJ case number 90-5-1-1-1257/1.

12. PVWC shall not deduct any penalties paid under this Decree pursuant to this Section or Section XI (Stipulated Penalties) in calculating its federal, State, or local income tax. Furthermore, PVWC agrees to hold the State and the NJDEP harmless for any such penalties.

## VI. GENERAL REQUIREMENTS FOR PVWC SUBMITTALS

13. Any materials required to be submitted to NJDEP by PVWC under this Decree, shall also be provided simultaneously to EPA as a courtesy. Any materials required to be submitted to EPA by PVWC under this Decree shall also be provided simultaneously to NJDEP as a courtesy.

14. Review of PVWC's Submittals.

a. By NJDEP: After review of any plan, report, or other item that PVWC is required to submit for review and approval by NJDEP under this Consent Decree, NJDEP, after consultation with EPA, will in writing: (i) approve the submission; (ii) approve the submission upon specified conditions; (iii) approve part of the submission (with or without specified conditions) and disapprove the remainder; or (iv) disapprove the submission. Under this process, NJDEP, after consultation with EPA, may require PVWC to perform additional studies, design work, or other additional Interim Milestones and Interim Measures to meet the Long-Term Compliance Requirements objectives of Section VII (Long-Term Compliance Requirements) and/or the Interim Measures objectives of protection of human health and the environment under Section VIII (Interim Measures). Notwithstanding the foregoing, for any State permitting process that does not otherwise independently require consultation with EPA, and that is not specifically included in this Consent

Decree as part of the permitting process for constructing and operating the Compliance Project(s) or Related Project(s), consultation by NJDEP with EPA is not required under this Consent Decree; or

b. By EPA/the United States: After review of any plan, report, or other item that PVWC is required to submit for review and approval by EPA and/or the United States under this Consent Decree, EPA and/or the United States, after consultation with the NJDEP, will in writing: (i) approve the submission; (ii) approve the submission upon specified conditions; (iii) approve part of the submission (with or without specified conditions) and disapprove the remainder; or (iv) disapprove the submission. Under this process, EPA and/or the United States, after consultation with NJDEP, may require PVWC to perform additional studies, design work, or other additional Interim Milestones to meet the Long-Term Compliance Requirements objectives of Section VII (Long-Term Compliance Requirements).

c. If the State and the United States agree in writing, they may change the authority to review and approve the submittals from PVWC as between either the State or the United States upon ten (10) Days' notice to PVWC, and such written agreement will be filed with the Court as a nonmaterial modification of this Decree.

15. If the submission is approved pursuant to either subparagraph 14(a)(i) or 14(b)(i), PVWC shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved. If the submission is conditionally approved or approved only in part pursuant to either subparagraphs 14(a)(ii)) or (iii) or 14(b)(ii) or (iii), PVWC shall, for subparagraph (a), upon written direction from respectively NJDEP, after consultation with EPA, and for

subparagraph (b), upon written direction from EPA and/or the United States, after consultation with NJDEP, take all actions required by the approved plan, report, or other item, for subparagraph (a), that NJDEP, after consultation with EPA, and for subparagraph (b), that EPA and/or the United States, after consultation with NJDEP, determine(s) are technically severable from any disapproved portions.

16. If the submission is disapproved in whole or in part pursuant to either subparagraphs 14(a)(iii) or (iv) or 14(b)(iii) or (iv), PVWC shall, not later than 45 Days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding paragraphs. If the resubmission is approved in whole or in part, PVWC shall proceed in accordance with the preceding Paragraph.

17. If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, for subparagraph (a), NJDEP, after consultation with EPA, and for subparagraph (b), EPA and/or the United States, after consultation with NJDEP, may again require PVWC to correct any deficiencies, in accordance with the preceding Paragraphs, or may itself correct any deficiencies.

18. If PVWC elects to invoke Dispute Resolution as set forth in Section XIII (Dispute Resolution) concerning any decision to disapprove, approve on specified conditions, or modify a submission, PVWC shall do so by sending a Notice of Dispute in accordance with Section XIII (Dispute Resolution) not later than 30 Days (or such other time as the Parties agree to in writing) after receipt of the applicable decision.

19. Any stipulated penalties applicable to the original submission under the stipulated penalty provisions of Section XI (Stipulated Penalties) accrue during the specified period, but shall not be payable unless the resubmission is untimely or is disapproved in

whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of PVWC's obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

## VII. LONG-TERM COMPLIANCE REQUIREMENTS

20. PVWC shall comply with the following Compliance Projects and Interim Milestones set forth in and developed under this Section VII (Long-Term Compliance Requirements) and shall use its best efforts to commence each obligation earlier than required by this Decree.

Compliance Project(s) and Interim Milestones

*Levine Reservoir*

21. Following a lengthy bid protest which ended with a decision on January 10, 2025 by the Superior Court of New Jersey, Appellate Division, in favor of PVWC, PVWC proceeded to consummate the contract for the Levine Reservoir Compliance Project with the lowest, responsible bidder, J. Fletcher Creamer & Son Inc. ("Contractor for Levine"). Notice to proceed with construction was issued on May 1, 2025.

22. PVWC shall take all reasonable efforts to ensure that the Levine Reservoir Project is Placed into Service no later than May 27, 2027. PVWC may seek relief from the Placement into Service milestone through the modification process set forth in Section XX (Modification) of this Consent Decree. If the proposed modification is approved, PVWC may alter the terms of any of its contracts with third parties, if PVWC believes that same is appropriate under the contract.

*Great Notch and New Street Reservoirs*

23. NJDEP shall provide to PVWC any final decisions it has in its possession

concerning water storage waivers issued to Consecutive Systems. Within ninety (90) days of receipt of same, PVWC shall use that information and any documents in its own possession to determine the total storage capacity needed to satisfy the contractual requirements and operational needs of the Consecutives, including modelling data, and provide that information to NJDEP. PVWC will use the results of the evaluation and supporting modeling data, and consider NJDEP/EPA's comments if any, in the Comprehensive Planning Report to be submitted to NJDEP for approval.

24. By September 1, 2026, PVWC shall submit to NJDEP a progress report of PVWC's feasibility studies concerning the condition of PVWC's water delivery system, including project recommendations for upgrades or repairs to the system to improve resiliency. EPA or NJDEP may require PVWC to perform additional studies. By June 9, 2027, PVWC shall submit a follow-up report of PVWC's feasibility studies which shall include but are not limited to amendments, updates, supplements, and/or corrections to prior reports, and a completed feasibility study report(s) on the New Street Reservoir Dam, including the various approaches it considered and its recommendation for how to proceed. EPA or NJDEP may require PVWC to perform additional studies or reports.

25. Within four months of the effective date of the Consent Decree, PVWC shall use its best efforts to enter into a Memorandum of Understanding ("MOU") with the City of Newark ("Newark") requiring the Parties to schedule their respective compliance projects in a coordinated fashion that minimizes adverse impact to regional resilience. Not later than 15 Days after the MOU's execution, PVWC shall submit a copy of the signed MOU to NJDEP and EPA.

26. By January 15, 2027, PVWC shall coordinate with all impacted Consecutive Systems that have water storage and/or system pressure requirements related to any

Compliance Project and Related Projects. The coordination shall include, at a minimum, workshops to review key engineering findings, discuss technical alternatives, and obtain feedback on schedule, water quality, water volume, and water pressure concerns of the impacted Consecutive Systems and the impacts of the Compliance Projects.

27. PVWC shall identify each Consecutive System's water storage and/or system pressure requirements, if any, related to the Compliance Projects, and will submit this information in the Comprehensive Planning Report to NJDEP and EPA.

28. Comprehensive Planning Report. By May 1, 2028, PVWC shall submit to the NJDEP for approval a Comprehensive Planning Report containing the following items:

a. A description of the recommended plan to accomplish the New Street Reservoir and Great Notch Reservoir Compliance Projects and each Related Project, including resiliency projects, necessary to accomplish these Compliance Projects.

b. Challenges and proposed solutions that PVWC believes it may need to overcome to accomplish these Compliance and Related Projects, including the need to acquire property, inefficiency concerns (either related to time, cost, or both), service-related concerns, environmental concerns, coordination with wholesale interconnections, and regional resilience.

c. A Conceptual Design for constructing and accomplishing the New Street Reservoir and Great Notch Reservoir Compliance Projects, and a basic planning schedule and sequence for each Related Project ("Initial Basic Planning Schedule"). The Initial Basic Planning Schedule shall establish a sequence and schedule to achieve full operational compliance by October 1, 2054, and shall include a list containing the phase of Compliance and Related Projects that can proceed directly to developing the Preliminary Designs, with start and end dates for

Preliminary Design. The Initial Basic Planning Schedule shall also include a description of additional phases of Compliance and Related Projects for initiation and completion and their chronology and anticipated timeframes based on the proposed sequencing.

d. Any alternatives to the recommended designs for these Compliance Projects ranked by preference.

e. An explanation of the factors and logic that form the basis for PVWC's recommendations, including all relevant facts and professional opinions considered by PVWC in developing such recommendations.

f. Results of all PVWC studies and investigations, including feasibility, condition assessment, and environmental compliance, relating to PVWC's efforts to prepare the Comprehensive Planning Report.

g. A plan for periodically updating PVWC's Risk and Resiliency Assessment and Emergency Response Plan required pursuant to Section 1433 of the SDWA during construction of the Compliance and Related Projects.

29. Comprehensive Compliance Schedule (Update every five years) – PVWC will complete the Compliance Projects and Related Projects in phases in accordance with an approved Comprehensive Compliance Schedule. PVWC shall complete each phase in accordance with deadlines for Interim Milestones approved by the EPA. As provided in this Paragraph, PVWC shall submit the first Comprehensive Compliance Schedule not later than 12 Months after NJDEP approves the Comprehensive Planning Report required by Paragraph 28. Every five years on the October 1st that falls at the end of each five-year period thereafter, in accordance with this Paragraph, PVWC shall submit to NJDEP and EPA, for EPA approval, an updated Comprehensive Compliance Schedule covering the time period

between the date of submission and the Final Compliance Date. PVWC shall procure professional services for design of the first, sequenced Compliance Project as listed in the Comprehensive Compliance Schedule within six (6) months of NJDEP approval of the Comprehensive Planning Report.

a. At a minimum, the initial Comprehensive Compliance Schedule and each submission of the updated Comprehensive Compliance Schedule shall include as much information as reasonably possible for the schedule and sequencing of the Compliance Projects and Related Projects and outline Interim Milestones that identify or state:

1. Each phase of design and construction, with each phase to include a separate Interim Milestone for: (i) completion of Preliminary and Final Design; (ii) securing of all necessary approval(s) of plans and specifications by NJDEP and any other governmental entities; (iii) advertisement for bids; (iv) award of contract; (v) issuance of a Notice to Proceed; and (vi) Project(s) Placed into Service. Interim Milestones shall be established at sufficient frequencies to provide EPA and NJDEP sufficient opportunity to track PVWC's progress implementing the Compliance Projects and Related Projects, maintain oversight, and ensure compliance with the Final Compliance Date;

2. The identification of the phase(s) in which construction of all major components of the Compliance Project(s) and Related Project(s) will be completed and Placed into Service, including the phase(s) for the installation of the various selected types of filtration, disinfection and other treatment process units, if any, and the construction of all

other major components of the Compliance Project(s) and Related Projects;

3. The technical justification for the proposed schedule of additional Interim Milestones; and

4. A deadline by which each Interim Milestone shall be completed.

b. If PVWC seeks to delay an existing Interim Milestone deadline, PVWC shall include in the proposed update to the Comprehensive Compliance Schedule a justification for such proposed modification and all relevant facts and professional opinions that inform such request.

30. By the October 1st that falls at the conclusion of each five-year period, PVWC shall submit to EPA for approval, an updated Comprehensive Compliance Schedule to achieve full operational compliance by October 1, 2054. Once the Comprehensive Compliance Schedule and each updated Comprehensive Compliance Schedule has been approved by the EPA, it shall supersede the previously approved schedule. Each approved Comprehensive Compliance Schedule shall be signed by the Parties and

a. filed with the Court and incorporated into the Consent Decree as an enforceable non-material modification of the Decree, if such Comprehensive Compliance Schedule does not delay the Final Compliance Date; or

b. filed with the Court as a proposed material modification of the Decree, and shall be incorporated into the Consent Decree as an enforceable material modification of the Decree upon signature by the Court, if such Comprehensive Compliance Schedule delays the Final Compliance Date.

31. <u>Final Compliance Date.</u> By October 1, 2054, PVWC shall Place into Service

all Compliance Projects and Related Projects in compliance with the LT2 Rule and all applicable New Jersey Safe Drinking Water rules at N.J.A.C. 7:10-1, *et seq*. ("the Final Compliance Date"), and shall continue to comply with all such provisions and applicable requirements thereafter.

32. Schedule Acceleration. The Parties agree that, if upon or after submittal of the Initial Basic Planning Schedule for Compliance and Related Project(s) as required by Paragraph 28(c), the Parties learn that it may be possible to accelerate the construction of the Compliance Project(s) and the related Interim Milestones and Final Compliance Date set forth in this Section VII (Long-Term Compliance Requirements) or shorten their respective deadlines, then an accelerated schedule for construction of the Compliance Project(s) and Placement of Compliance Project(s) into Service shall be established through the Decree's Modification process set forth in Section XX (Modification) to ensure public health protection is achieved in the most expeditious manner possible.

## VIII. INTERIM MEASURES

33. Until PVWC has complied with all the requirements set forth in Section VII (Long-Term Compliance Requirements), PVWC shall implement the Interim Measures set forth in this Section, in addition to any other Interim Measures approved by NJDEP under this Decree.

Comprehensive Microbial Action Plans

34. PVWC shall implement an approved Comprehensive Microbial Action Plan for the Reservoirs until the respective Compliance Project(s) are Placed into Service. Not later than 30 Days of the Effective Date, PVWC shall submit to NJDEP, for approval, PVWC's Comprehensive Microbial Action Plan for the Reservoirs. The Plan shall include a

schedule for implementation upon approval, identifying the compliance measures that can be implemented as soon as possible, or sooner than others, but none later than 180 Days after approval.

35. Not later than 180 Days of receiving the NJDEP approval of PVWC's Comprehensive Microbial Action Plan, PVWC shall submit to the NJDEP, for approval, a proposed summary of its Comprehensive Microbial Action Plan for purposes of informing the public about the Plan on its website. PVWC's summary may omit certain details from the Plan for security reasons. PVWC shall post the summary on its website not later than ten (10) Days of approval.

The Reservoir Management Plan(s)

36. Not later than 30 Days of the Effective Date, PVWC shall submit to NJDEP, for approval, a Comprehensive Reservoir Management Plan for the Reservoirs that includes the following elements:

a. Surface water runoff control;
b. Wildlife management;
c. Maintaining water quality;
d. Security improvements to prevent unauthorized access;
e. An emergency response plan for planning and responding to emergency situations;
f. A comprehensive monitoring plan; and
g. A schedule for implementing major components of the Reservoir Management Plan.

37. Not later than 180 Days of receiving the NJDEP approval of PVWC's Comprehensive Reservoir Management Plan, PVWC shall implement the approved Plan.

38. Not later than 180 Days of receiving the NJDEP approval of PVWC's Comprehensive Reservoir Management Plan, PVWC shall submit to the NJDEP, for approval, a proposed summary of its Comprehensive Reservoir Management Plan for

purposes of informing the public about the Plan on its website. PVWC's summary may omit certain details from the Plan for security reasons. PVWC shall post the summary on its website not later than ten (10) business days of approval.

39. PVWC shall conduct periodic reviews, no less frequently than every five years, of its Comprehensive Reservoir Management Plan(s) to assess the effectiveness of the Plan(s) and determine whether any modifications to the Plan(s) are necessary until each Reservoir is decommissioned or in compliance with the LT2 requirements. The results of the periodic review and recommendations shall be submitted to NJDEP for approval by the deadline for submitting updated Comprehensive Compliance Schedules under Paragraph 29.

Simultaneous Compliance

40. A change in water system operation, treatment or source may cause a conflict in other areas of water quality or noncompliance with other regulatory requirements including but not limited to lead and copper (see 40 C.F.R. § 141.90(a)(3)) and microbial and disinfection byproducts (see § 141.709). Prior to the addition of a new source, or any long-term change in water treatment or operation, PVWC must submit written documentation, in accordance with NJDEP regulations and policy, to NJDEP describing the change or addition, explaining what steps PVWC is taking to address simultaneous compliance issues.

41. Northeast Regional Resiliency Workgroup - PVWC shall continue participation in the Northeast Regional Resiliency Workgroup to ensure communication/ coordination with Northeastern Water Suppliers to identify existing vulnerabilities, collaborate on regional solutions, improve regional interconnectivity, formalize bulk purchase and emergency contracts, and highlight potential impacts to project schedules.

## IX. MEETING REQUIREMENTS

42. EPA, NJDEP, and PVWC shall meet and confer on at least an annual basis, on or about October 1 of each year, unless they agree, in writing, to a different frequency of progress meetings.

43. Throughout the term of this Consent Decree, the Parties agree, at the request of any Party to discuss, at the annual progress meeting as provided for in the Paragraph above, or at a separately arranged meeting, any issue or request relating to the activities and the schedule of activities required by this Consent Decree. The Parties shall send to any such meeting responsible and appropriate representatives to discuss the issues raised in good faith.

## X. REPORTING REQUIREMENTS

44. The reporting requirements of this Consent Decree do not relieve PVWC of any reporting obligations required by the Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

45. Any information provided under this Consent Decree may be used by the State or the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

46. PVWC shall maintain legible copies of documentation relied on in preparation of or which form the basis of the reports and certifications for a period of three years from the date of the report or certification, unless requested by the Plaintiff(s) to retain the documents for a longer period, not to exceed three years after the termination of the Consent Decree. PVWC may satisfy this obligation by providing copies of the document to the Plaintiffs. Nothing herein shall alter the obligations of PVWC to maintain documents in accordance with the SDWA, the National Primary Drinking Water Regulations

(“NPDWRs”), or any other applicable law.

47. Annual Reporting and Certification: PVWC shall submit the following reports to EPA and NJDEP at the addresses set forth in Section XVII (Notices):

a. Commencing after the Effective Date and continuing until the termination of this Consent Decree under Section XXI (Termination), PVWC shall submit by email to NJDEP and EPA at the addresses set forth in Section XVII (Notices), annual reports for the preceding year and certification on or before October 1, unless NDJEP and EPA request semi-annual reports as needed according to the same process as set forth below with the time periods adjusted respectively. For example, if the Effective Date occurs in 2026, the first annual report hereunder shall be due on October 1, 2027.

b. The annual report and certification for the preceding period year shall detail the status and progress of all Interim Milestones, Interim Measures, and any other requirements set forth in Sections VII (Long-Term Compliance Requirements), and VIII (Interim Measures), including, but not limited to, any accelerated Interim Milestones incorporated into this Consent Decree under Section XX (Modification). Each report and certification shall include a description of the work performed in the previous period year and a projection of the work to be performed during the following period year under this Consent Decree and a description of any anticipated delay which may affect compliance with any Interim Milestones or Interim Measures. The report shall also include a description of the status of any National Environmental Policy Act (NEPA) review, if any such review is imposed upon PVWC outside of this Consent Decree; permit application process, operation and

maintenance, and reports to state and local agencies.

c. The report and certification shall also include a description of any non-compliance with any requirements of this Consent Decree and an explanation of the likely cause of any violation, and of the remedial steps taken, or to be taken, to prevent or minimize any such violation. If the cause of the non-compliance cannot be fully explained at the time that the Annual Report is due, PVWC shall so state in its Annual Report. PVWC shall investigate the cause of any violation and shall then submit an amendment to the Annual Report, including a full explanation of the cause of any violation, not later than 30 Days of the Day PVWC becomes aware of the cause of the violation. For any Interim Milestone deadline during the reporting period that is not met during the reporting period the report and certification shall state the work remaining to be done to achieve full compliance with such Interim Milestone, and provide a schedule for completion of such work. If an Interim Milestone is not met, the report and certification shall state what, if any, impact PVWC anticipates there may be on compliance with other Interim Milestones in Section VII (Long-term Compliance Requirements). As part of the Annual Report, for any non-compliance with any Interim Milestone in Section VII (Long-term Compliance Requirements) that may affect the remaining Interim Milestones in that Section VII, including any accelerated or additional Interim Milestones, PVWC shall prepare and submit a plan, for approval by the United States, that describes the steps PVWC will take to prevent or minimize any noncompliance with such Milestones. Nothing in this Paragraph or Paragraph 51 (Emergency Notification) relieves PVWC of its obligation to provide the notice required by Section XII (Force Majeure).

48. Certification: Each report submitted by PVWC under this Section shall be signed by an official of PVWC and include the following certification:

> I certify under penalty of perjury that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I have no personal knowledge that the information submitted is other than true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

49. This certification requirement does not apply to emergency or similar notifications where compliance would be impractical, provided that not later than ten (10) Days after such notification would otherwise have been due, PVWC provides the certification required by the immediately preceding Paragraph.

50. Notification of Compliance Issue: If PVWC fails to comply, or has reason to believe that it may become non-compliant, with any requirement of this Consent Decree, PVWC shall notify the EPA and the NJDEP of the compliance issue and its likely duration, in writing, not later than ten (10) Days of the Day PVWC first becomes aware of the compliance issue, with an explanation of the likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation. Nothing in this Paragraph or the following Paragraph relieves PVWC of its obligation to provide the notice required by Section XII (Force Majeure).

51. Emergency Notification: Whenever any violation of this Consent Decree or of any applicable permits or any other event affecting PVWC's performance under this Decree may pose an immediate threat to the public health or welfare or the environment, as soon as possible, PVWC shall notify the NJDEP by telephone at (609) 292-5550 during business hours, or (877) WARN-DEP during non-business hours, but no later than six hours after PVWC first knew of the violation or event, including any emergency that may tend to lessen the quality or pressure of delivered water, or increase the likelihood of delivery of water that does not meet the standards set forth in N.J.A.C. 7:10-5. This procedure is in addition to the other requirements set forth in this Section. NJDEP may also request a written report of the violation or event and PVWC's response. NJDEP will inform and coordinate with EPA, as necessary.

## XI. STIPULATED PENATLIES

52. Late Payment of Civil Penalty. If PVWC fails to pay the civil penalty required to be paid under Section V (Civil Penalty) when due, PVWC shall pay a stipulated penalty of $500.00 per Day for each Day to the United States that the payment is late.

53. PVWC shall be liable for stipulated penalties to the United States and/or the State for violations of this Consent Decree as specified below, unless excused under Section XII (Force Majeure). A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

54. Interim Measure Violations. The following stipulated penalties shall accrue per violation per Day for each violation of a requirement of Section VIII (Interim Measures):

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $100 | 1st through 14th Day |
| $200 | 15th through 30th Day |
| $500 | 31st Day and beyond |

55. Long-Term Compliance Violations. The following stipulated penalties shall accrue per violation per Day for each violation of the requirements identified in Section VII (Long-Term Compliance Requirements), except that a penalty of $2,500 shall be added to the penalties below for each Day of any violation of the requirement to Place into Service all Compliance Projects and Related Projects by the Final Compliance Date as set forth in Paragraph 31:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th Day |
| $1,500 | 15th through 30th Day |
| $2,000 | 31st Day and beyond |

56. Reporting Requirements. The following stipulated penalties shall accrue per violation per Day for each violation of the reporting requirements of Section X (Reporting Requirements):

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $100 | 1st through 14th Day |
| $150 | 15th through 30th Day |
| $200 | 31st Day and beyond |

57. Transfer of Ownership. If PVWC fails to: (a) provide a copy of this Consent Decree to any proposed transferee; (b) provide written notice to the United States and State at least 30 Days prior to any transfer of any portion of the Reservoirs; or (c) provide a copy of the proposed written agreement with the transferee as required by Paragraph 4, PVWC shall pay a stipulated penalty of $10,000 per occurrence.

58. Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall

continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

59. PVWC shall pay stipulated penalties to the United States and the State not later than 30 Days after receiving a written demand by either Plaintiff. PVWC shall pay 50% of the total stipulated penalty amount due to the United States and 50% to the State. The Plaintiff making a demand for payment of a stipulated penalty shall simultaneously send a copy of the demand to the other Plaintiffs.

60. Either Plaintiff may, in the unreviewable exercise of its discretion, reduce or waive its portion of stipulated penalties otherwise due it under this Consent Decree.

61. Stipulated penalties shall continue to accrue as provided in Paragraph 58, during any Dispute Resolution (Section XIII), but need not be paid until the following:

a. If the dispute is resolved by agreement of the Parties or by a decision of EPA or NJDEP that is not appealed to the Court, PVWC shall pay any accrued penalties determined to be owing, together with interest, to the United States and the State not later than 30 Days of the effective date of the agreement or the receipt of EPA's or NJDEP's decision or order.

b. If the dispute is appealed to the Court and the United States or the State prevails in whole or in part, PVWC shall pay all accrued penalties determined by the Court to be owing, together with interest, not later than 60 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

c. If any Party appeals the District Court's decision, PVWC shall pay all accrued penalties determined to be owing, together with interest, not later than 15 Days of receiving the final appellate court decision.

62. PVWC shall pay stipulated penalties owing to the United States in the manner set forth in Section V (Civil Penalty) and with the confirmation notices required by that Section, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

63. PVWC shall pay stipulated penalties owing to the State by check made payable to the "Treasurer, State of New Jersey" and remitted to the Division of Revenue at the address stated in the stipulated penalty demand.

64. If PVWC fails to pay stipulated penalties according to the terms of this Consent Decree, PVWC shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States or the State from seeking any remedy otherwise provided by law for PVWC's failure to pay any stipulated penalties.

65. The payment of penalties and interest, if any, shall not alter in any way PVWC's obligation to complete the performance of the requirements of this Consent Decree.

66. Non-Exclusivity of Remedy. Stipulated penalties are not the United States' or the State's exclusive remedy for violations of this Consent Decree. Subject to the provisions of Section XV (Effect of Settlement/Reservation of Rights), the United States and the State expressly reserve the right to seek any other relief each deems appropriate for PVWC's violation of this Decree or applicable law, including but not limited to an action against PVWC for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt. However, the amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid under this Consent Decree.

## XII. FORCE MAJEURE

67. "Force majeure," for purposes of this Consent Decree, means any event arising from causes beyond the control of PVWC, of any entity controlled by PVWC, or of PVWC's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite PVWC's best efforts to fulfill the obligation. Given the need to protect public health and welfare and the environment, the requirement that PVWC exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure and best efforts to address the effects of any potential force majeure (a) as it is occurring and (b) following the potential force majeure, such that any resulting delay or non-performance is, and any adverse effects of the delay or non-performance are, minimized to the greatest extent possible. "Force Majeure" does not include PVWC's financial inability to perform any obligation under this Consent Decree.

68. If any event occurs for which PVWC will or may claim a force majeure, PVWC shall provide notice by telephone or by email to EPA and NJDEP through an EPA and NJDEP representative identified in Section XVII (Notices). The deadline for the initial notice is three days after PVWC first knew or should have known that the event would likely delay or prevent performance. PVWC shall be deemed to know of any circumstance of which any contractor of, subcontractor of, or entity controlled by PVWC knew or should have known.

69. Regardless of whether PVWC seeks to assert a claim of force majeure concerning the event, within seven Days after the notice under the above Paragraph, PVWC shall submit a further notice to EPA and NJDEP that includes (a) an explanation and description of the event and its effect on PVWC's completion of the requirements of the

Consent Decree; (b) a description and schedule of all actions taken or to be taken to prevent or minimize the delay and/or other adverse effects of the event; (c) if applicable, the proposed extension of time for PVWC to complete the requirements of the Consent Decree; (d) PVWC's rationale for attributing such delay to a force majeure [if it intends to assert such a claim]; (e) a statement as to whether, in the opinion of PVWC, such event may cause or contribute to an endangerment to public health or welfare or the environment; and (f) all available proof supporting any claim that the delay was attributable to a force majeure.

70. Failure to submit a timely or complete notice or claim under Paragraphs 68 or 69 regarding an event precludes PVWC from asserting any claim of force majeure regarding that event, provided, however, that EPA may, in its unreviewable discretion, excuse such failure if it is able to assess to its satisfaction whether the event is a force majeure, and whether PVWC has exercised its best efforts, under Paragraph 67.

71. After receipt of any claim of force majeure, EPA, after a reasonable opportunity for review and comment by NJDEP, will notify PVWC of EPA's determination whether PVWC is entitled to relief under Paragraph 67, and, if so, the excuse of, or the extension of time for, performance of the obligations affected by the force majeure. An excuse of, or extension of the time for performance of, the obligations affected by the force majeure does not, of itself, excuse or extend the time for performance of any other obligation.

72. If PVWC elects to invoke the dispute resolution procedures set forth in Section XIII (Dispute Resolution), it shall do so no later than 15 Days after receipt of EPA's notice. In any such proceeding, PVWC has the burden of proving that it is entitled to relief under Paragraph 67, that its proposed excuse or extension was or will be warranted under the

circumstances, and that it complied with the requirements of Paragraphs 67-69. If PVWC carries this burden, the delay or non-performance at issue shall be deemed not to be a violation by PVWC of the affected obligation of this Consent Decree identified to EPA and the Court.

## XIII. DISPUTE RESOLUTION

73. Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. PVWC's failure to seek resolution of a dispute under this Section concerning an issue of which it had notice and an opportunity to dispute under this Section prior to an action by the United States or State to enforce any obligation of PVWC arising under this Decree precludes PVWC from raising any such issue as a defense to any such enforcement action.

74. Informal Dispute Resolution. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when PVWC sends DOJ, EPA, and NJDEP a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 30 Days from the date the dispute arises, unless that period is modified by written agreement among all the Parties. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States, after consultation with the State, shall be considered binding unless, not later than 30 Days after the conclusion of the informal negotiation period, PVWC invokes formal dispute resolution procedures as set forth below.

75. Formal Dispute Resolution. PVWC shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by sending DOJ,

EPA, and NJDEP a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting PVWC's position and any supporting documentation relied upon by PVWC.

76. The United States and the State will send PVWC their Statement of Position not later than 60 Days of receipt of PVWC's Statement of Position. The Plaintiffs' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the Plaintiffs. The Plaintiffs' Statement of Position is binding on PVWC, unless PVWC files a motion for judicial review of the dispute in accordance with the following Paragraph.

77. Judicial Dispute Resolution. PVWC may seek judicial review of the dispute by filing with the Court and serving on the Plaintiffs a motion requesting judicial resolution of the dispute. The motion (a) must be filed not later than ten (10) Days of receipt of the Plaintiffs' Statement of Position under the preceding Paragraph; (b) may not raise any issue not raised in informal dispute resolution under Paragraph 74, unless the Plaintiffs raise a new issue of law or fact in the Statement of Position; (c) shall contain a written statement of PVWC's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation; and (d) shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

78. The Plaintiffs shall respond to PVWC's motion within the time period allowed by the Local Rules of this Court. PVWC may file a reply memorandum, to the extent permitted by the Local Rules.

79. Standard of Review

a. Disputes Concerning Matters Accorded Record Review. Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 75 pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by NJDEP or EPA under this Consent Decree; the adequacy of the performance of work undertaken under this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, PVWC shall have the burden of demonstrating, based on the administrative record, that the position of the Plaintiffs is arbitrary and capricious, or otherwise not in accordance with law, or with this Consent Decree. An administrative record of the dispute shall be maintained by EPA and shall contain all Statements of Position, including supporting documentation, submitted pursuant to Paragraphs 75 and 76.

b. Other Disputes. Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 75, PVWC shall bear the burden of demonstrating that its position complies with this Consent Decree and better furthers the objectives of the Consent Decree.

80. The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of PVWC under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 61. If PVWC does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XI (Stipulated Penalties).

## XIV. INFORMATION COLLECTION AND RETENTION

81. The United States, the State, and their representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

a. monitor the progress of activities required under this Consent Decree;

b. verify any data or information submitted to the United States or the State in accordance with the terms of this Consent Decree;

c. obtain samples and, upon request, splits of any samples taken by PVWC or its representatives, contractors, or consultants;

d. obtain documentary evidence, including photographs and similar data related to activities required under this Consent Decree; and

e. assess PVWC's compliance with this Consent Decree.

82. Upon request, PVWC shall provide EPA and the NJDEP or their authorized representatives splits of any samples taken by PVWC.

83. Until three years after the termination of this Consent Decree, PVWC shall retain in accessible format, and shall instruct its contractors and agents to preserve, or obtain from its contractors and agents and preserve all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to PVWC's performance of its obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United

States or the State, PVWC shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

84. At the conclusion of the information-retention period provided in the preceding Paragraph, PVWC may store or dispose of records relating to this Consent Decree in a manner consistent with the law governing PVWC's recordkeeping responsibilities and PVWC's internal policy for recordkeeping.

85. With respect to documents, records, or other information provided to the United States, PVWC may assert that documents, records, or other information required to be provided under this Section or under Section VII (Long-Term Compliance Requirements) of this Decree, including but not limited to facilities plans, basis-of-design reports ("BODRs"), and design plans, contain information that is: (i) protected from disclosure under any privilege recognized by state or federal law, or (ii) exempt from disclosure under one or more exemption(s) in the Freedom of Information Act ("FOIA"), including, without limitation, 5 U.S.C. § 552(b)(3) (specific exemption under statute other than FOIA), § 552(b)(4) (confidential business information ("CBI") exemption), and§ 552(b)(7)(F) (exemption for security-sensitive law enforcement information). Any documents, records, or other information that PVWC asserts contain privileged information or information exempt from disclosure under a FOIA exemption in 5 U.S.C. § 552(b) ("FOIA Exempt Material") shall be provided to the United States, through the United States Attorney's Office, in accordance with Section XVII (Notices), with a cover letter stating that the documents, records, or other information contain confidential privileged information and/or FOIA Exempt Material, and identifying the law and/or exemption(s) asserted, and PVWC shall mark each and every page of such documents, records, or other information that contains confidential privileged material with the legend, "Confidential—Privilege" or that contains

FOIA Exempt material with the legend, "Submitted Subject to Claim of FOIA Exemption" The United States will limit dissemination of the pages designated as containing FOIA Exempt Material to EPA employees as necessary to carry out the EPA's evaluations under this Decree and maintain a tracking sheet of who receives copies. Should any documents, records, or other information containing information designated as FOIA Exempt Material be subject to a FOIA request, the United States will notify PVWC and afford PVWC a reasonable time to object or comment with respect to the United States's proposed response to the FOIA request. If the United States does not agree with the position of PVWC regarding any claimed exemption to FOIA, the dispute shall be resolved in accordance with Section XIII (Dispute Resolution). The United States agrees to promptly notify PVWC of any lawsuit wherein a third party seeks access to FOIA-Exempt Material, and shall not oppose any request by PVWC to intervene in such lawsuit to defend its interests.

86. In the event that PVWC takes the position that PVWC must maintain sole custody of certain sensitive documents, records, or other information to prevent a serious security risk to PVWC's water supply system, PVWC may request that the United States review such sensitive documents, records, or other information at premises designated by PVWC. If the United States does not agree with the position of PVWC or the premises designated by PVWC, the dispute shall be resolved in accordance with Section XIII (Dispute Resolution). PVWC's request that the United States review certain sensitive documents, records, or other information at premises designated by PVWC shall not preclude the United States from requesting that copies of such documents, records, or other information be provided to the United States at its own office(s). If the United States agrees to review certain sensitive documents, records, or other information at premises designated by PVWC, PVWC shall mark all pages in such documents, records, or other information that contain

information that PVWC believes would constitute a serious security risk if released. Should a dispute arise between PVWC and the United States under this Paragraph related solely to the release of certain sensitive documents, records, or other information to the United States outside the custody of PVWC, the dispute shall be resolved by PVWC and the United States in accordance with Section XIII (Dispute Resolution). The United States agrees to consult with PVWC regarding the proper handling of any information designated as FOIA Exempt Material at the termination of this Consent Decree, if PVWC so requests at that time.

87. With respect to documents, records, or other information provided to the State, PVWC may also assert that documents, records, or other information required to be provided under this Section or under Section VII (Long-Term Compliance Requirements) of this Decree, including but not limited to facilities plans, BODRs, and design plans, contain information that is: (i) protected from disclosure under any privilege recognized by state or federal law, or (ii) exempt from disclosure under one or more exemption(s) in the New Jersey Open Public Records Act("OPRA"), codified at N.J.S.A. 47:1A-1, *et seq*. P.L. 2001, Chapter 404. Any documents, records, or other information that PVWC asserts contain privileged information or information exempt from disclosure under OPRA ("OPRA Exempt Material") shall be provided to the State in accordance with Section XVII (Notices). PVWC shall provide a cover letter stating that the documents, records, or other information contain confidential privileged information and/or OPRA Exempt Material and identifying the law and/or exemption(s) asserted, and PVWC shall mark each and every page of such documents, records, or other information that contains confidential privileged material with the legend, "Confidential—Privilege" or that contains OPRA Exempt Material with the legend, "Submitted Subject to Claim of OPRA Exemption." The State will limit dissemination of the pages designated as containing OPRA Exempt Material to State

employees as necessary to carry out the State's evaluations under this Decree and maintain a tracking sheet of who receives copies. Should any documents, records, or other information containing information designated as OPRA Exempt Material be subject to a OPRA request, the State will notify PVWC and afford PVWC a reasonable time to object or comment with respect to the State's proposed response to the OPRA request. If the State does not agree with the position of PVWC regarding any claimed exemption to OPRA, the dispute shall be resolved in accordance with Section XIII (Dispute Resolution). The State agrees to promptly notify PVWC of any lawsuit wherein a third party seeks access to OPRA-Exempt Material, and shall not oppose any request by PVWC to intervene in such lawsuit to defend its interests.

88. In the event that PVWC takes the position that PVWC must maintain sole custody of certain sensitive documents, records, or other information to prevent a serious security risk to PVWC water supply system, PVWC may request that the State review such sensitive documents, records, or other information at premises designated by PVWC. If the State does not agree with the position of PVWC or the premises designated by PVWC, the dispute shall be resolved in accordance with Section XIII (Dispute Resolution), Paragraph 79.b (Other Disputes). PVWC's request that the State review certain sensitive documents, records, or other information at premises designated by PVWC shall not preclude the State from requesting that copies of such documents, records, or other information be provided to the State at its own office(s). If the State agrees to review certain sensitive documents, records, or other information at premises designated by PVWC, PVWC shall mark all pages in such documents, records, or other information that contain information that PVWC believes would constitute a serious security risk if released. Should a dispute arise between PVWC and the State under this Paragraph related solely to the release of certain sensitive

documents, records, or other information to the State outside the custody of PVWC, the dispute shall be resolved by PVWC and the State in accordance with Section XIII (Dispute Resolution).

89. The State agrees to consult with PVWC regarding the proper handling of any information designated as OPRA Exempt Material at the termination of this Consent Decree.

90. This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or the State under applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of PVWC to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XV. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

91. This Consent Decree resolves only the civil claims of the United States and the State for the violations alleged in the Complaint filed in this action through the date of lodging.

92. The United States and the State reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 91. This Consent Decree shall not be construed to limit the rights of the United States or the State to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal or State laws, regulations, or permit conditions, except as expressly specified in the Paragraph 91. Without expanding this Court's jurisdiction to enforce the Consent Decree, the United States and the State further reserve all legal and equitable remedies to address any conditions if there is or may be an imminent and substantial endangerment to the public health or welfare or the environment arising at, or

posed by, PVWC's Facilities, whether related to the violations addressed in this Consent Decree or otherwise.

93. In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, civil penalties, other appropriate relief relating to PVWC's Facilities or violations, PVWC shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, claim preclusion (res judicata), issue preclusion (collateral estoppel), claim- splitting, entire controversy, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved under Paragraph 91 of this Section.

94. This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations. This Consent Decree is not, and shall not be interpreted as, a waiver or variance from, or modification of, any requirements of the SDWA or the LT2 Rule. For avoidance of doubt, nothing herein shall relieve PVWC of its independent obligation to ensure that all drinking water delivered to the PVWC drinking water distribution system is in compliance with all NPDWRs and applicable federal, State and local laws, regulations, and permits. PVWC remains responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits. PVWC's compliance with this Consent Decree shall be no defense to any action commenced under any such laws, regulations, or permits, except as set forth herein. The United States and the State do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that PVWC's compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act, 42 U.S.C. § 300f, *et seq.,* or with any other provisions of federal, State, or local laws, regulations, or permits.

95. This Consent Decree does not limit or affect the rights of PVWC or of the United States or the State against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against PVWC, except as otherwise provided by law.

96. This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any non-party.

## XVI. COSTS

97. The Parties shall bear their own costs of this action and any dispute resolution proceeding instituted under Section XIII (Dispute Resolution), including attorneys' fees, except that the United States and the State shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by PVWC.

## XVII. NOTICES

98. Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and shall be submitted electronically as follows:

To the United States:

EES Case Management Unit
U.S. Department of Justice
Environment and Natural Resources Division
eescdcopy.enrd@usdoj.gov
Re: DJ # DOJ No.: 90-5-1-1-12573/1

United States Attorney
District of New Jersey
United States Attorney's Office
970 Broad Street, 7th Floor
Newark, New Jersey 07102

John F. Basiak Jr.
Assistant United States Attorney
Chief, Civil Division
john.basiak@usdoj.gov

Alex Silagi
Assistant United States Attorney
Deputy Chief, Civil Division
alex.silagi@usdoj.gov

USAO No.: 2022V00234

and

U.S. Environmental Protection Agency Region 2
Water Compliance Branch
Kraft.Nicole@epa.gov
Vinciguerra.Amy@epa.gov
Region 2_SDWAEnforcement@epa.gov

U.S. Environmental Protection Agency Region 2
Office of Regional Counsel
Fischer.Lauren@epa.gov

<u>To NJDEP:</u>

Linda Ofori, Director
Division of Water Enforcement
New Jersey Department of Environmental Protection
401 East State Street
P.O. Box 420, Mail Code 401-04E
Trenton, New Jersey 08625-0420
Linda.Ofori@dep.nj.gov

Patricia Ingelido, Director
Division of Water Supply & Geoscience
New Jersey Department of Environmental Protection
401 East State Street
P.O. Box 420, Mail Code 401-04Q
Trenton, New Jersey 08625-0420
patricia.ingelido@dep.nj.gov

To PVWC:

James Mueller
Executive Director
Passaic Valley Water Commission
1525 Main Avenue
Clifton, New Jersey 07011
jmueller@pvwc.com

99. Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

100. Notices submitted pursuant to this Section shall be deemed submitted upon mailing or transmission by email, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing. Alternatively to electronic notice, or together with electronic notice, the sending party may transmit notice via certified mail with proof of receipt requested. Service of certified mail shall be deemed submitted on the third business day on which it was given to the US Postal Service to deliver, provided that the sending party receives the proof of certified mail receipt.

## XVIII. EFFECTIVE DATE

101. The Effective Date of this Consent Decree shall be the date on which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket; provided, however, that PVWC hereby agrees it shall be bound to perform duties scheduled to occur prior to the Effective Date. If the United States, in consultation with the State, withdraws or withholds consent to this Consent Decree before entry, or the Court declines to enter the Consent Decree, then the preceding requirement to perform duties scheduled to occur before the Effective Date shall terminate.

## XIX. RETENTION OF JURISDICTION

102. The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Consent Decree or entering orders modifying this Consent Decree, or effectuating or enforcing compliance with the terms of this Decree.

## XX. MODIFICATION

103. The terms of this Consent Decree, including any attached appendices, may be modified by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court. Non-material modifications to this Decree will be effective, and enforceable, as part of this Consent Decree upon filing with the Court, not later than five Days of the Parties' final signature agreeing to the modification. Non-material modifications include, but are not limited to, amendments to the State's applicable regulations, changes to an approved Comprehensive Compliance Schedule that do not delay the Final Compliance Date under Section VII (Long-term Compliance Requirements), and modifications to the Interim Measures under Section VIII. Material modifications include a delay in the Final Compliance Date. Any modification to the Consent Decree shall be posted on PVWC's website, not later than five Days from the date of its effectiveness

104. Any disputes concerning modification of this Decree shall be resolved pursuant to Section XIII (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 79 (Standard of Review), the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XXI. TERMINATION

105. After PVWC has completed the requirements of Section VII (Long-Term Compliance Requirements), and has complied with all other requirements of this Consent Decree, including but not limited to, payment of the civil penalty and any accrued stipulated penalties as required by this Consent Decree, Place into Service each Compliance Project, and PVWC has operated each such Project for a period of 365 Days thereafter without any violations of the SDWA that are related to each Compliance Project, PVWC may serve upon the United States and the State a Request for Termination, stating that PVWC has satisfied those requirements, together with all necessary supporting documentation.

106. Following receipt by the United States and the State of PVWC's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether PVWC has satisfactorily complied with the requirements for termination of this Consent Decree. If the United States, after consultation with the State, agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

107. If the United States, after consultation with the State, does not agree that the Decree may be terminated, PVWC may invoke Dispute Resolution under Section XIII. However, PVWC shall not seek Dispute Resolution of any dispute regarding termination until 60 Days after service of its Request for Termination.

108. At any time, if the United States, after consultation with New Jersey, has sufficient information to determine that PVWC has met the requirements of termination under Paragraph 105, the United States, after notice to PVWC, may file a motion to terminate the Decree. If the parties are in agreement, a joint stipulation of termination may be filed with the Court.

109. If the United States does not have sufficient information to determine whether PVWC has met the requirements of termination under Paragraph 105, the United States may request additional information from PVWC, as permitted pursuant to Section XIV (Information Collection and Retention), which PVWC shall provide within 30 days of receiving the United States' request.

## XXII. PUBLIC PARTICIPATION

110. This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. PVWC consents to entry of this Consent Decree without further notice and agrees not to withdraw from, or oppose entry of, this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified PVWC in writing that it no longer supports entry of the Decree.

## XXIII. PUBLIC NOTIFICATION

111. Upon entry of the Consent Decree, PVWC shall submit certification and a copy of the public notice to the United States and the State that it has completed public notification for the violation of 40 C.F.R. § 141.714 in accordance with 40 C.F.R. Part 141 Subpart Q and applicable state regulations.

112. Compliance Notification: Not later than 45 Days after the Effective Date, PVWC must provide notice in writing to PVWC's consumers, and to the owner and operator of all public water systems that purchase water from PVWC, explaining that PVWC entered into a Consent Decree that sets forth a schedule to build Compliance Project(s) to achieve compliance with the uncovered finished water storage requirements of 40 C.F.R. Part 141,

Subpart W ("Compliance Notification"). The Compliance Notification shall include information about PVWC's website, including the web address (URL), where PVWC shall post: (i) a copy of this Consent Decree; (ii) any modifications of this Consent Decree under Section XX (Modification); (iii) any sampling data and other information about the status and substance of its implementation of the Long-Term Compliance Requirements and Interim Measures, in accordance with Sections VII and VIII, and this Section of this Decree; and (iv) contact information for a person at PVWC to whom members of the public may direct any questions, concerns or complaints related to implementation of this Consent Decree. This list of information to be provided on the website is not intended to be an exclusive one, and PVWC may, in its discretion, post other information on the website that would be useful for apprising the public of progress made under this Consent Decree.

113. PVWC shall provide a draft of the proposed Compliance Notification to the NJDEP and EPA for review and NJDEP approval no later than 14 Days after the Effective Date. The NJDEP and EPA shall endeavor, not later than 14 Days of receipt, to comment on and provide any requested modifications to the proposed notice.

114. Prior to commencing construction of the Compliance Project(s), PVWC shall establish and maintain a website or a webpage on its website that provides the construction plan and purpose of the Compliance Project(s), along with any air monitoring or stormwater or other mitigation that would be required for the Compliance Project(s). The website or webpage shall also provide periodic updates on the progress of the construction of the Compliance Project(s), an explanation for any delays that may occur, and steps PVWC is taking to minimize the delay. The website or webpage shall also post any monitoring data that will be performed under the National Environmental Policy Act (NEPA), if applicable, review process, or any construction permit. The website or webpage will also provide contact

information for any complaints relating to the construction of the Compliance Project(s).

115. Until Termination of this Decree pursuant to Section XXI (Termination), PVWC shall include a statement in its annual Consumer Confidence Report that explains that PVWC entered into a Consent Decree that sets forth a schedule to build and Place into Service all Compliance Projects and Related Projects to achieve compliance with the uncovered finished water storage requirements of 40 C.F.R. Part 141, Subpart W.

116. Upon request by any interested person, any notice or publication required by this Section, or Section VIII (Interim Measures), shall also be made available in translation.

## XXIV. SIGNATORIES/SERVICE

117. Each undersigned representative of PVWC, the State, the United States Attorney's Office, and the Principal Deputy Assistant Attorney General for the Environment and Natural Resources Division of the United States Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

118. This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. PVWC agrees to accept service of process in accordance with Section XVII (Notices) with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons. PVWC need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XXV. INTEGRATION

119. This Consent Decree, including deliverables that are subsequently approved pursuant to this Decree, constitutes the final, complete, and exclusive agreement and

understanding among the Parties with respect to the settlement embodied in the Consent Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. Other than materials that are subsequently submitted and approved by NJDEP or EPA under this Consent Decree, or agreements setting forth any schedules established under Section VII (Long-Term Compliance Requirements, Schedule Acceleration), or additional Interim Milestones established under Section VII (Long-Term Compliance Requirements, Additional Interim Milestones), no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Consent Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree. Upon the Effective Date, this Consent Decree supersedes the TAACO and any other previous order or instruction of the NJDEP relating to the subject matter of this Consent Decree.

## XXVI. <u>26 U.S.C. SECTION 162(f)(2)(A)(ii) IDENTIFICATION</u>

120. For purposes of the identification requirement in Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), and 26 C.F.R. § 1.162-21(b)(2), performance of Section II (Applicability), Paragraph 5; Section VI (General Requirements for PVWC Submittals) Paragraphs 13-15; Section VII (Long-Term Compliance Requirements); Section VIII (Interim Measures); Section IX (Meeting Requirements); Section X (Reporting Requirements) except not Paragraph 51; Section XIV (Information Collection and Retention) except not Paragraph 84, is restitution, or required to come into compliance with law.

## XXVII. <u>HEADINGS</u>

121. Headings to the Sections and Subsections of this Consent Decree are provided for convenience and do not affect the meaning or interpretation of the provisions of this

Consent Decree.

**XXVIII. <u>FINAL JUDGMENT</u>**

122. Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States, the State, and PVWC. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

Dated and entered this __ day of __________, 2026

_________________________________
UNITED STATES DISTRICT JUDGE

*Signature Page for the Consent Decree entered in the matter of United States et al. v. Passaic Valley Water Commission*

FOR PLAINTIFF UNITED STATES OF AMERICA:

FOR THE DEPARTMENT OF JUSTICE:

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice

CATHERINE FISKE Digitally signed by CATHERINE FISKE Date: 2026.08.10 10:36:17 -04'00'

Dated:__________

Catherine Adams Fiske
Senior Counsel
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Enforcement Section
One Courthouse Way, Room 10-314
Boston, MA 02110
(617) 947-9157
addie.fiske@usdoj.gov

United States Attorney
District of New Jersey

Alex Silagi
Assistant United States Attorney
Deputy Chief, Civil Division
alex.silagi@usdoj.gov

*Signature Page for the Consent Decree entered in the matter of United States et al. v. Passaic Valley Water Commission*

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:

Dated: _5/15/2026

PATRICIA HICK Digitally signed by PATRICIA HICK Date: 2026.05.15 18:10:03 -04'00'

PATRICIA C. HICK
Deputy Regional Counsel, performing the duties of the Regional Counsel
U.S. Environmental Protection Agency, Region 2
290 Broadway
New York, NY 10007

Dated: __________

CAROL KING Digitally signed by CAROL KING Date: 2026.06.10 13:27:31 -04'00'

CAROL DEMARCO KING
Acting Director
Water Enforcement Division Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency

OF COUNSEL:
PHYLLIS KAPLAN FEINMARK
Supervisor, Water and General Law Branch
LAUREN FISCHER
Assistant Regional Counsel
Water and General Law Branch
U.S. Environmental Protection Agency, Region 2
290 Broadway
New York, NY 10007

DANE A. WILSON
Attorney-Adviser
Water Enforcement Division Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency

*Signature Page for the Consent Decree entered in the matter of United States et al. v. Passaic Valley Water Commission*

FOR PLAINTIFF THE STATE OF NEW JERSEY:

JENNIFER DAVENPORT
ATTORNEY GENERAL OF NEW JERSEY

/s/ *Andrew Reese* Dated: 7/23/26
Andrew Reese
Deputy Attorney General

EDPOTOSNAK
ACTING COMMISSIONER OF NEW JERSEY
DEPARTMENT OF ENVIRONMENTAL PROTECTION

Linda Ofori, Director
Division of Water Enforcement
401 East State Street
P.O. Box 420, Mail Code 401-04E
Trenton, NJ. 08625-0420

*Signature Page for the Consent Decree entered in the matter of United States et al. v. Passaic Valley Water Commission*

FOR DEFENDANT, PASSAIC VALLEY WATER COMMISION ("PVWC"):

By: ______________________
James Mueller, Executive Director
On behalf of PVWC

Dated: 6/5/26